**STARK & STARK**
A Professional Corporation
By: Gene Markin, Esq.
Attorney ID #022382010
100 American Metro Blvd.
Hamilton, NJ 08619
Ph: (609) 895-7248
*Attorneys for Plaintiffs SCF Cedar LLC, Salsa Con Fuego Management LLC and Joseph Nieves*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SCF CEDAR LLC**, SALSA CON FUEGO MANAGEMENT LLC, and JOSEPH NIEVES<br><br>        Plaintiffs,<br><br>        v.<br><br>**ROBERT GUZMAN,** MICHAEL CIRON, JOHN MANGAN, DCM GROUP LLC, and SALSA LATINO CORP.<br><br>        Defendants. | CIVIL ACTION NO.:<br><br><br>**COMPLAINT**<br>**JURY TRIAL DEMAND** |

Plaintiffs SCF Cedar LLC, Salsa Con Fuego Management LLC, and Joseph Nieves, by way of Complaint against the Defendants Robert Guzman, Michael Ciron, John Mangan, DCM Group LLC, and Salsa Latino Corp. hereby aver and allege as follows:

## SUMMARY OF CASE

1.      This action stems from the deceptive, fraudulent, tortious and bad faith conduct of Defendants in connection with a restaurant and bar business known as Salsa Con Fuego located in the Bronx, NY.

2.      Defendants Michael Ciron, John Mangan, and DCM Group LLC mismanaged the business, diverted revenues and profits for their own personal gain, never made the required capital contributions to be owners of the various business entities, and conspired and purported to sell a portion of the business, which they did not own, and without the required approvals and authorizations, to Defendants Robert Guzman and Salsa Latino Corp.

3.      Since the purported sale and turnover of "business assets," Defendants Robert Guzman and Salsa Latino Corp. have misappropriated and converted Plaintiffs' trade secrets and intellectual property, including social media accounts and login credentials, phone and reservation systems and login credentials, Plaintiffs' Google business page and login credentials, and the business website and login credentials, for the purpose of causing harm to Plaintiffs and the business, and have refused to turn over these assets and trade secrets despite repeated demands.

4.      Furthermore, Defendants conspired with the business location landlord, DRBX Holdings, LLC, to deprive Plaintiffs of the lease and to force Plaintiffs out.

5.      Defendants are liable for damages as a result if their misappropriation of trade secrets, conversion, unjust enrichment, trademark infringement, misrepresentations, and breaches of fiduciary duties.

**2**

6.     Plaintiffs also seek declaratory relief pertaining to various agreements that must be invalidated as well as a judicial dissolution of Salsa Con Fuego Management LLC.

7.     Plaintiffs seek injunctive and other equitable relief seeking return of Plaintiffs' intellectual property, business assets, and trade secrets as well as enjoining Defendants from continued unauthorized use of Plaintiffs' trade secrets, intellectual property, and registered trademark.

## **PARTIES**

8.     Plaintiff SCF Cedar LLC ("SCF Cedar") is a New York limited liability company with a business address at 2297 Cedar Ave, Bronx, New York 10468.

9.     Plaintiff Salsa Con Fuego Management LLC ("SCF Management") is a New York limited liability company with a business address at 2297 Cedar Ave, Bronx, New York 10468.

10.     Plaintiff Joseph Nieves ("Nieves") is an individual with an address at 2317 Kingsland Ave, Bronx, NY 10469.

11.     Defendant Robert Guzman ("Guzman") is an individual with an address at 610 11th Street, Apt 3, Union City, NJ 07087.

12.     Defendant Michael Ciron ("Ciron") is an individual with an address at 210 S Greenbush Road, Orangeburg, NY 10962.

13.     Defendant John Mangan ("Mangan") is an individual with an address at 13 Yellowstone Drive, West Nyack, NY 10994.

14.     DCM Group LLC ("DCM Group") is a New York limited liability company with a business address at 98 Westfield Rd, White Plains, NY 10605.

**3**

15.     Salsa Latino Corp. ("Salsa Latino") is a New York corporation with a business address at 418 Broadway, Suite R, Albany, NY 12207.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this matter involves a federal question under the Defend Trade Secrets Act, 18 U.S.C.S. § 1836, *et seq*., the Lanham Act, 15 U.S.C. § 1051 *et seq*., and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

17.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3).

## BACKGROUND

18.     In or around 2011, Nieves started the Salsa Con Fuego restaurant by and through his then business entity Salsa Con Fuego, Inc.

19.     Nieves owned, operated, and managed the business until 2013 when Ciron and Mangan approached Nieves about wanting to get involved in the business and helping to manage the Salsa Con Fuego restaurant, which was a going concern.

20.     At that time, Nieves' mother was diagnosed with advanced cancer and Nieves had to step away from the business to care for her.

21.     Nieves agreed to allow Ciron to buy in to the business as a minority shareholder provided he make the required capital contribution.

22.     To that end, a new company was formed, SCF Cedar LLC, and by way of an Amended and Restated Operating Agreement, Ciron was appointed Manager of SCF Cedar and Nieves agreed to transfer assets of the restaurant business known as Salsa Con Fuego located at 2297 Cedar Avenue, Bronx, New York (the "Salsa Con

**4**

Fuego Business") held by Salsa Con Fuego, Inc. to SCF Cedar. *See* Amended and Restated Operating Agreement dated October 11, 2013 (the "SCF Cedar Operating Agreement"), attached hereto as **Exhibit A**.

23.    Notably, SCF Cedar maintained the operating bank accounts for the business and was the owner of the liquor license attached to the business.

24.    The SCF Cedar Operating Agreement provided for Michael Ciron to become a 16.67% owner in exchange for a $350,000 capital investment and for Richard Clarke ("Clarke") to own 8.33% in exchange for $250,000.

25.    Michael Ciron and Richard Clarke, however, never paid or invested their respective capital contributions and were therefore never issued any ownership interests in SCF Cedar, which remained solely and wholly owned by Nieves.

26.    As such, neither Ciron nor Clarke ever became owners or members of SCF Cedar – and Nieves remained the sole 100% owner of SCF Cedar.

27.    Moreover, Mangan wanted to be a partner in the business and based on his representations of investing in the business, Nieves agreed.

28.    Consequently, SCF Cedar and Mangan's company, DCM Group, LLC ("DCM Group") entered into a Joint Venture Agreement (the "JVA") whereby those parties agreed to form Salsa Con Fuego Management, LLC ("SCF Management") to own, operate, and manage the Salsa Con Fuego Business. *See* Joint Venture Agreement dated October 23, 2013, attached hereto as **Exhibit B**.

29.     Per the JVA, SCF Cedar agreed to make a $300,000 capital contribution to SCF Management for a 60% ownership interest valued at $3,000,000. DCM Group stood to receive 40% of SCF Management in exchange for a capital contribution of $100,000.

30.     Upon information and belief, DCM Group never made the $100,000 capital contribution and therefore never received an ownership interest in SCF Management.

31.     The same day, SCF Cedar and DCM Group executed an Amended and Restated Operating Agreement of SCF Management. *See* Amended and Restated Operating Agreement of Salsa Con Fuego Management, LLC dated October 23, 2013 (the "SCF Management Operating Agreement"), attached hereto as **Exhibit C**.

32.     The SCF Management Operating Agreement designated DCM Group as the manager and in addition to DCM Group's initial $100,000 capital investment required DCM Group and John Mangan to make additional capital contributions required for "opening liquor, food and dry goods orders for the business as well as all grand opening expenses." *See* SCF Management Operating Agreement, Exh. C at § 5.01(g).

33.     If DCM Group did not timely make its capital contribution payments then its membership interest would be proportionately reduced. *Id*. at § 5.01(e).

34.     Moreover, the SCF Management Operating Agreement contains limitations on transfer of ownership interests whereby any member that wishes to sell or transfer its interests (the "Offering Member") must first "obtain the consent of the Company," *i.e.* approval of majority of the Class A Interest." *Id*. at § 10.01(b).

**6**

35.     In the absence of consent, the Offering Member must comply with right of first refusal requirements and provide the company and then the other member an opportunity to purchase the membership interests. *Id*. at § 10.01(c).

36.     As indicated in the operating agreement and applicable business law, a member cannot sell its ownership interests without strict compliance with the transfer and sale provisions.

37.     Curiously, in August 2013, several months prior to the formation and existence of SCF Management (which was formed on October 18, 2013 as reflected in the Certificate of Formation filed with the New York Secretary of State), a Management Agreement was executed between SCF Cedar and SCF Management. *See* Management Agreement dated August 23, 2013, attached hereto as **Exhibit D**.

38.     It appears the purpose of the Management Agreement was to make SCF Management the manager of SCF Cedar and vest SCF Management with the power to manage the business affairs and operations of SCF Cedar, however, the agreement is riddled with inconsistencies, contradictions, and ambiguities.

39.     With respect to management, the Management Agreement provides that the Manager, whoever that may be, can be removed for cause if the gross sales of the business are "less than $5,500,000." *Id*. at § 2.5(a).

40.     In September 2014, John Mangan and Michael Ciron purported to adopt a resolution on behalf of SCF Management whereby DCM Group became a 50% owner due to SCF Cedar's alleged failure to pay a capital call. *See* Company Resolution dated September 15, 2014 (the "SCF Management Resolution"), attached hereto as **Exhibit E**.

**7**

41.     Joseph Nieves never received notice of any such "capital call" and it appears that Michael Ciron, manager of SCF Cedar, conspired with John Mangan to adopt this resolution in favor of DCM Group and to the detriment of SCF Cedar despite DCM Group not having made the alleged additional contribution of $250,000.

42.     In fact, neither DCM Group nor Michael Ciron or John Mangan made any contributions to the business and just took salaries, bonuses, and other financial benefits at the expense of SCF Cedar, which contributed all the funds needed for the renovations, maintenance, and operation of the business.

43.     As such, the purported resolution is a sham that was designed to defraud Joseph Nieves and SCF Cedar.

44.     In signing the SCF Management Resolution as manager of SCF Cedar, Michael Ciron breached his fiduciary duties to SCF Cedar and Joseph Nieves as well as breached the good faith performance standard set forth in the SCF Cedar Operating Agreement.  *See* SCF Cedar Operating, Exh. A at § 7.4.

45.     In any event, the change in ownership interests was never consummated as indicated in various filings and tax documents received over the years, including the K-1s issued over the last ten years, which consistently listed DCM Group as 40% owner and SCF Cedar as 60% owner.

46.     While the corporate documents reflect a 60-40 ownership split between SCF Cedar and DCM Group, they are nevertheless inaccurate because DCM Group never contributed the initial $100,000 capital investment and therefore never became an owner of SCF Management.

47.     In 2016, without Nieves' knowledge or consent, Mangan and Ciron attempted to add themselves and SCF Management as co-licensees to SCF Cedar's liquor license by forging Nieves' signature.

48.     According to a forensic review performed by a handwriting specialist and analysis of documents filed with the New York State Liquor Authority, it was determined that the signature appearing as that of Joseph Nieves was forged and that the forms were not signed by Nieves.

49.     Additionally, the forms – which were filled out and completed by Mangan and Ciron – list and identify Nieves as 100% owner of SCF Cedar, which confirms that neither Ciron nor Clarke ever became members or owners of SCF Cedar.

50.     By forging Nieves' signature and attempting to gain ownership of SCF Cedar's valuable liquor license through fraud, Defendants Mangan, Ciron, and DCM Group committed fraud, breached their respective fiduciary duties, and/or tortiously interfered with SCF Cedar's business.

51.     Additionally, Nieves has discovered that Ciron and Mangan acted in bad faith and breached their fiduciary duties by paying themselves inflated and disproportionate salaries and/or bonuses, using company funds for their own personal expenses and leisure activities, and misappropriating corporate funds and revenues.

52.     In August 2024, DCM Group purported to sell its 50% interest in SCF Management, which it did not have, to Salsa Latino Corp. *See* Membership Interest Purchase Agreement dated August 12, 2024 (the "MIPA"), attached hereto as **Exhibit F**.

**9**

53.    Salsa Latino agreed to purchase DCM Group's ownership shares in SCF Management for $300,000, which was paid at closing.

54.    DCM Group represented that it owned 50% of SCF Management when it did not own anything (or at most 40%).  *See* MIPA, Exh. G at § 3.2.

55.    DCM Group further represented and warranted that "[n]o person or other entity has any right of first refusal to purchase any of the membership interests in the Company, except as set forth in the Amended and Restated Operating Agreement Dated as of October 23, 2013 at paragraph 10.01 thereof, said right, however, being hereby waived by the Company and its Class A members by their execution of this Membership Interest Purchase Agreement." *Ibid*.

56.    SCF Management made the same representations about ownership and waiver of first refusal rights.  *Id*. at §§ 4.1, 4.2.

57.    Those representations, however, were false and misleading:

    a.    DCM Group did not own 50% of SCF Management.

    b.    As Manager of SCF Management, DCM Group did not have the ability to waive the Company's option to purchase the offered shares by DCM Group because any investment or capital acquisition in excess of $100,000 requires "the consent of a majority of the Class A Interests," which are owned by SCF Cedar.  *See* SCF Management Operating Agreement, Exh. C at § 7.03(c).

    c.    As Manager of SCF Cedar, Michael Ciron did not have the authority to decline or waive the option to purchase DCM Group's offered shares on behalf of SCF Cedar without the consent of the

majority member because the asking price was greater than $100,000. *See* SCF Cedar Operating Agreement, Exh. A at § 7.3(c).

58.    The majority and only member of SCF Cedar was Nieves.

59.    As such, only Nieves had the ability to exercise or decline SCF Cedar's contractual right to purchase DCM Group's offered shares in SCF Management prior to DCM Group obtaining the requisite authority to offer those shares to an outside third party such as Salsa Latino Corp.

60.    Nieves was never provided an opportunity to either accept or decline the offered shares and therefore any sale or transfer of DCM Group's ownership interest in SCF Management is void *ab initio* as it was done in contravention of the SCF Management Operating Agreement.

61.    As such, DCM Group did not have the requisite authority and approvals to sell its membership interests in SCF Management to Salsa Latino Corp. and by doing so breached the SCF Management Operating Agreement and its fiduciary duties.

62.    At the same time in August 2024, Defendants DCM Group, Ciron, DRBX Holdings, and Salsa Latino conspired to steal the business from SCF Cedar by brokering a deal with the property landlord, DRBX Holdings, to lease the property to Guzman by and through SCF Management – even though Guzman had no authority to enter into such a lease agreement on behalf of SCF Management. *See* Landlord Agreement, attached hereto as **Exhibit K**; *see also* Lease Agreement dated August 13, 2024 (the "Lease Agreement"), attached hereto as **Exhibit L**.

**11**

63.    The purpose of the above purported transaction was to displace SCF Cedar and Nieves from the business and to take over control of the business by interfering with SCF's contractual relationship with the landlord.

64.    In or around December 2024, Nieves returned to the business and discovered the above improprieties and misconduct.

65.    He was also approached by Robert Guzman who introduced himself as the "new owner" of the business.

66.    Due to the financial performance of the business, in May 2025, SCF Cedar exercised its contractual right to terminate SCF Management as Manager of SCF Cedar.  *See* Management Agreement, Exh. D at § 2.5(a); *see also* Termination Letter dated May 13, 2025, attached hereto as **Exhibit G**.

67.    Therefore, as of May 2025, SCF Management was no longer the Manager of SCF Cedar and had no authority or legal right to act for or on behalf of Salsa Con Fuego.

68.    Once Joseph Nieves stepped back in to the business and asserted his ownership rights, he removed Ciron as manager of SCF and removed DCM Group as manager of SCF Management, in accordance with the respective operating agreements.  *See* Written Consent Corporate Actions and Resolutions, attached hereto as **Exhibits H-1 and H-2**.

69.    Contemporaneously, the Salsa Con Fuego trademark (Registration No. 6544279), which was previously owned by SCF Management, was assigned and transferred to SCF Cedar.  *See* Trademark Assignment, attached hereto as **Exhibit I**.

70.     As such. since its only contract and source of revenue was terminated by SCF Cedar (*see* Exh. G), SCF Management is now a shell of a company with no assets and no prospects and should be judicially dissolved.

71.     SCF Management is not an owner of the restaurant business and has no right to use any of SCF Cedars' business assets, including the social media accounts and the Salsa Con Fuego trademark.

72.     Nevertheless, Guzman has wrongfully and maliciously usurped control of various assets belonging to SCF Cedar including but not limited to the restaurant's phone system, the Salsa Con Fuego Google Business page, SCF's Instagram page, the business website www.salsaconfuego.com, and the SCF TikTok account.

73.     It seems that having come to the realization that he was duped and defrauded by Mangan and bought into a company that had no sustainable rights in and to the Salsa Con Fuego Business, Guzman has decided to cause as much harm to the business as possible.

74.     By letter sent to Guzman's attorneys on October 14, 2025, SCF Cedar outlined the history of events and demanded that Guzman turn over the credentials to all accounts, assets, and cease infringing on SCF Cedar's intellectual property and intentionally interfering with business operations.  *See* Letter to John J, Thompson dated October 14, 2025 (without exhibits), attached hereto as **Exhibit J**.

75.     Rather than comply and seek redress from the people who defrauded him, i.e. Mangan and Ciron, Guzman has refused to relinquish control of SCF Cedar's vital digital communication and marketing platforms and instead continues to intentionally interfere with the Salsa Con Fuego Business and its economic prospects

**13**

by misusing the accounts, shutting them down, impairing SCF Cedar's ability to manage and market the business, which relies heavily on its social media presence, and wrongfully precluding Nieves from using those accounts to promote and market the business.

76.     This has resulted in noticeable and documented business damages and losses, including loss of goodwill, loss of reputation, and loss of business (events had to be canceled due to insufficient marketing, reservations could not be confirmed, new events could not be held because of the inability to use the business social media accounts to advertise and market, etc.)

77.     Traditionally, the Salsa Con Fuego Business has heavily relied on its social media presence to market events at the restaurant and has achieved success generating business and attendance through its Instagram and TikTok accounts.

78.     Since Guzman has precluded SCF Cedar and Nieves from re-accessing those accounts, and has effectively shut those accounts down, the business has suffered irreparable harm and a continuing downturn in business.

79.     The business damage has been palpable, and the business is being injured every day through Guzman's knowing and malicious conduct:

- <u>Phone Systems</u>.  Without access to the restaurant's phone system, Nieves is prevented from answering and returning calls related to reservations, private events, and live shows as well as from responding to customer inquiries and general business development activities.  Customers who do not get return phone calls and who cannot make reservations are taking their business elsewhere to the detriment of SCF Cedar.
- <u>Google Business Page</u>.  Without access to the business Google Page, Nieves is unable to update pictures, contact information, restaurant hours, or provide venue details and updates to prospective patrons and customers.

**14**

- Instagram. The restaurant's business is largely dependent and contingent on its social media presence. If Salsa Con Fuego does not advertise and market its events and openings on social media, it does not get sufficient sales and turnaround to host events and remain open. By restricting access to the Instagram account and misappropriating the account, Guzman has wrongfully prevented Nieves from promoting events, specials, and performances at the restaurant as well as from engaging with customers, responding to inquiries, and maintaining visibility on social media.
- Website. Guzman has shut Nieves out of the website and is actively preventing Nieves from updating the website to reflect current and accurate venue information, menu offerings, event listings, etc. as well as from responding or acting upon submitted reservation forms and private event inquiries.
- TikTok. Without access to the Salsa Con Fuego TikTok account, Nieves is prevented from posting relevant content, promoting events, and reaching new audiences.

80.    The financial losses have been substantial and are estimated at more than $100,000 and growing.

81.    Compared to past sales and historical revenue data when the social media accounts and digital assets were actively managed and used to promote and market the business and the events taking place, the difference in sales is staggering and very clearly attributable to Guzman's actions and usurpation of SCF Cedar's trademark and digital business assets.

82.    Guzman continues to use and misuse SCF Cedar's intellectual property, trademark, trade secrets, and proprietary information to the detriment of Plaintiffs and to intentionally harm the Salsa Con Fuego Business.

83.    Unless he is not enjoined, Guzman will continue causing irreparable harm to the business.

84.    Defendants are liable for damages in connection with the various causes of action asserted below.

# COUNT ONE
## MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT
### (*18 U.S.C.S. § 1836, et seq.*)

85.     Each of the foregoing paragraphs is repeated, realleged, and incorporated by reference as if set forth at length herein.

86.     SCF Cedar's login credentials to its business social media accounts, phone system, Google business page, and website are trade secrets subject to protection under the Defend Trade Secrets Act, 18 U.S.C. §§ 1832, 1836.

87.     The aforementioned assets are a compilation of information that derive independent economic value by not being generally known to or accessible, through proper means, to the public, competitors, or third parties who can profit from their explicit and/or implicit and/or intentional and/or inevitable use or disclosure.

88.     This information is related to services used in or intended for use in interstate commerce.

89.     SCF Cedar has taken reasonable measures under the circumstances to maintain the secrecy of this information by *inter alia* limiting the people who have access to it and keeping tight control over its use.

90.     Guzman became privy to this information solely as a result of Mangan, Ciron, and/or DCM Group's unauthorized taking and transfer of this information to Guzman without SCF Cedar and/or Nieves' permission.

4933-3935-2698, v. 1

91.    Based on the information obtained and how it was obtained, Guzman knew or should have known the aforementioned trade secrets and confidential information were acquired by illicit means and Defendants were not authorized to use that information in any way.

92.    Yet Defendants Mangan, Ciron, DCM Group, Salsa Latino, and Guzman knowingly stole, or without authorization appropriated, took, and carried away such information.

93.    Salsa Latino and Guzman engaged in this conduct intending or knowing that it would injure SCF Cedar, the owner of the trade secrets at issue.

94.    The foregoing conduct of Defendants constitutes a misappropriation and misuse of SCF Cedar's confidential, trade secret information.

95.    The Defend Trade Secrets Act provides that any organization that commits an offense under the Act "shall be fined not more than the greater of $5,000,000 or 3 times the value of the stolen trade secret to the organization." 18 U.S.C. § 1832(b).

96.    Defendants acted willfully and maliciously in misappropriating SCF Cedar's proprietary, trade secret information for their own benefit and to the intended detriment of SCF Cedar.

97.    As a consequence of the foregoing, SCF Cedar has suffered and will continue to suffer economic losses, including but not limited to, lost customers, business, revenues, and profits, as well as irreparable harm and loss of goodwill, and SCF Cedar is entitled to compensatory damages in an amount yet to be determined pursuant to 18 U.S.C. § 1836(b)(3)(B), exemplary damages pursuant to 18 U.S.C. §

**17**

1836(b)(3)(C), attorney's fees, expenses, and costs pursuant to 18 U.S.C. § 1836(b)(3)(D).

# COUNT TWO
## TRADEMARK INFRINGEMENT
### (*15 U.S.C.S. § 1444*)

98.    Each of the foregoing paragraphs is repeated, realleged, and incorporated by reference as if set forth at length herein.

99.    Defendants Salsa Latino and Guzman have used and continue to use the SALSA CON FUEGO registered trademark (the "SCF Mark") in a way that is likely to cause confusion amongst consumers as to the quality and source of SCF Cedar's restaurant services.

100.   The SCF Mark is rightfully and duly owned by SCF Cedar and only SCF Cedar has the right to use and appropriate the Mark in connection with the Salsa Con Fuego Business.

101.   Defendants Salsa Latino and Guzman have adopted and/or copied the SCF Mark in violation of SCF Cedar's trademark rights and privileges.

102.   Defendants Salsa Latino and Guzman are misusing and misappropriating the SCF Mark, which they have no right to use, by and through their control of the SCF website, Google business page, and social media accounts.

103.   Defendants Salsa Latino and Guzman are using the SCF Mark to, in some instances, market and promote the restaurant business in such as way as to receive revenues from the business.

**18**

104.    As a result of the foregoing and upon information and belief, Defendants Salsa Latino and Guzman have violated the Lanham Act (15 U.S.C. § 1114) by using, in connection with the promotion, marketing, and sale of competing goods and services, trademark(s) which are likely to cause confusion or cause mistake or to deceive as to the affiliation, connection, or association of Plaintiff SCF Cedar with Defendants and as to the origin, sponsorship, or approval of Defendants in connection with the Salsa Con Fuego Business.

105.    As a result of the foregoing and upon information and belief, Defendants' acts constitute direct, indirect, contributory and vicarious trademark infringement.

106.    As a result of the foregoing unlawful acts, Plaintiff SCF Cedar has been irreparably harmed and will continue to suffer damage until an appropriate injunction and damage award, including increased treble damages and attorneys' fees, are imposed by this Court against Defendants.

107.    Upon information and belief, Defendant Defendants Salsa Latino and Guzman willfully and intentionally adopted and continued to use the SCF Mark to steal and trade off of Plaintiff's goodwill.

## COUNT THREE
## FALSE DESIGNATION OF ORIGIN
### (*15 U.S.C.S. § 1125(a)*)

108.    Each of the foregoing paragraphs is repeated, realleged, and incorporated by reference as if set forth at length herein.

109.    Defendants Salsa Latino and Guzman have used and continue to use the SALSA CON FUEGO registered trademark (the "SCF Mark") to market and promote the Salsa Con Fuego Business in a deceptive and misleading way.

**19**

110. The SCF Mark is rightfully and duly owned by SCF Cedar and only SCF Cedar has the right to use and appropriate the Mark in connection with the Salsa Con Fuego Business.

111. Defendants are using the SCF Mark in connection with the marketing and sale of restaurant services that is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Salsa Latino and/or Guzman with SCF Cedar, and/or as to the origin, sponsorship, or approval of the Salsa Con Fuego Business.

112. Specifically, Defendants are using and displaying the registered trademark of SCF Cedar such that consumers are likely to mistakenly perceive and believe Defendants to be an affiliate, sponsored or authorized provider of those services offered and provided by SCF Cedar.

113. Defendants' conspicuous display and use of the SCF Mark in connection with promotion and sale of restaurant services falsely suggests that Defendants are affiliated with or sponsored by SCF Cedar.

114. As such, and as a result of Defendants' wrongful conduct, Plaintiff SCF Cedar has suffered damages and losses, including but not limited to, dilution, loss of reputation, and sponsorship confusion.

## **COUNT FOUR**
### **UNFAIR COMPETITION**
### (*15 U.S.C.S. § 1125(a)*)

115. Each of the foregoing paragraphs is repeated, realleged, and incorporated by reference as if set forth at length herein.

116.    Defendants Salsa Latino and Guzman willfully and intentionally usurped the SCF Mark to make consumers believe there was an association, sponsorship, or affiliation between SCF Cedar and/or the Salsa Con Fuego Business and Defendants in order to trade off of and steal Plaintiff's goodwill.

117.    Additionally, Defendants have caused or are likely to have caused consumer confusion as to the source and/or sponsorship of SCF Cedar's restaurant services.

118.    By reason of the foregoing and upon information and belief, Defendants have violated Section 43 of the Lanham Act (15 U.S.C. § 1125(a)) by unfairly competing with SCF Cedar by using in connection with its marketing and advertising of services, false designations of origin which are likely to cause confusion or cause mistake or to deceive as to the affiliation, connection, or association of SCF Cedar with Defendants and as to the origin, sponsorship, or approval of Defendants' commercial activities.

119.    By reason of the foregoing unlawful acts, Plaintiff SCF Cedar has been irreparably harmed and will continue to suffer damage until an appropriate injunction and damage award, including increased treble damages and attorneys' fees, are imposed by this Court against Defendants.

## COUNT FIVE
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
## (*18 U.S.C.S. § 1030(a)*)

120.    Each of the foregoing paragraphs is repeated, realleged, and incorporated by reference as if set forth at length herein.

121.   The Computer Fraud and Abuse Act ("CFAA") makes it unlawful to "knowingly [cause] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally [cause] damage without authorization, to a protected computer." 18 U.S.C. §1030(a)(5)(A).

122.   The CFAA enables a person who suffers damage or loss by reason of a violation of the statute to maintain a civil action against the violator to obtain compensatory damages. 18 U.S.C. § 1030(g).

123.   According to the statute, "'damage' means any impairment to the integrity or availability of data, a program, a system, or information[.]" 18 U.S.C. § 1030(e)(8).

124.   The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service[.]" 18 U.S.C. § 1030(e)(11).

125.   The deletion of data from a protected computer "cause[s] damage . . . within the meaning of § 1030(a)(5)(A)(i) and (e)(8)" and is "the type of harm for which civil redress is available[.]" *B & B Microscopes v. Armogida*, 532 F. Supp. 2d 744, 758 (W.D. Pa. 2007).

126.   Compensable losses under the CFAA also include damage to, or the inoperability of, the accessed computer system. *See Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 474 (S.D.N.Y. 2004).

127.    Defendant Guzman gained unauthorized access to protected computer systems, *i.e.* SCF's Instagram account, TikTok account, website domain, Google business page, and telephone systems (the "Protected Accounts").

128.    The Protected Accounts belong to and are the exclusive property of SCF Cedar, which used the Protected Accounts to market and promote the Salsa Con Fuego Business, advertise venue events, take reservations, and communicate with patrons and prospective customers.

129.    Guzman gained access to the Protected Accounts but did not have authorization or permission to access or use those Accounts.

130.    Upon information and belief, Guzman altered the login credentials to the Protected Accounts for purposes of shutting SCF Cedar and Nieves out of the Accounts.

131.    Upon information and belief, Guzman has deleted and/or altered content on the Accounts for purposes of harming and hurting the Salsa Con Fuego Business.

132.    Upon information and belief, Guzman has used his unauthorized access of the Protected Accounts to misappropriate data and to interrupt, impair, and inhibit Plaintiffs' ability to conduct its business and provide services to customers.

133.    As a result, Plaintiffs have suffered damages and losses attributable to and directly resulting from Guzman's violations of the CFAA, including but not limited to, loss of data, loss of customers, damages in excess of $5000, expenses to investigate and take remedial steps in response to a Guzman's unauthorized access and misappropriation of data, remedial measures and costs associated with regaining access to the Protected Accounts and restoring lost data, the cost of restoring the

status and followers of the Instagram and TikTok Accounts, the costs of evaluating and restoring the Protected Accounts to their pre-unauthorized access state and status, and other associated costs and expenses.

## COUNT SIX
### CONVERSION

134.   Each of the foregoing paragraphs is repeated, realleged, and incorporated by reference as if set forth at length herein.

135.   Guzman has taken possession of the Protected Accounts and has excluded SCF Cedar and Nieves from those Accounts.

136.   The Protected Accounts belong to and are the property of SCF Cedar and Nieves.

137.   Guzman has wrongfully, without authority or permission, taken possession of and exercised dominion over Plaintiffs' digital assets and electronic data, i.e. the Protected Accounts and login credentials fort those Accounts.

138.   By doing so, Guzman has converted Plaintiffs' intangible property and is liable for the tort of conversion.

## COUNT SEVEN
### BREACH OF CONTRACT

139.   Each of the foregoing paragraphs is repeated, realleged, and incorporated by reference as if set forth at length herein.

140.   Ciron is a party to the SCF Cedar Operating Agreement and agreed to contribute $350,000 to SCF Cedar in exchange for membership interests.

4933-3935-2698, v. 1

141.    Ciron failed to make the required $350,000 capital contribution and breached the operating agreement.

142.    DCM is a party to the SCF Management Operating Agreement and agreed to contribute $100,000 and other capital to SCF Management in exchange for membership interests.

143.    DCM failed to make the required capital contributions to SCF Management and breached the operating agreement.

144.    In connection with DCM Group's sale of its purported membership interests in SCF Management, which it did not have, Ciron – in his capacity as manager of SCF Cedar – breached the SCF Operating Agreement and exceeded the authority granted therein by declining and waiving the option to purchase DCM Group's offered shares on behalf of SCF Cedar without the consent of the majority member in violation of Section 7.3(c) of the SCF Cedar Operating Agreement (because the asking price was greater than $100,000).

145.    Additionally, DCM Group did not have the requisite authority and approvals to sell its membership interests in SCF Management to Salsa Latino Corp. and by doing so breached the SCF Management Operating Agreement.

146.    The aforementioned conduct of Ciron and DCM Group and that described herein and throughout constitutes breaches of contract, *i.e.* the operating agreements of SCF Cedar and SCF Management.

**25**

# COUNT EIGHT
## BREACH OF FIDUCIARY DUTIES

147.    Each of the foregoing paragraphs is repeated, realleged, and incorporated by reference as if set forth at length herein.

148.    As manager of SCF Cedar, Ciron owed SCF Cedar and Nieves fiduciary duties, including that of care, loyalty, and good faith and fair dealing.

149.    As manager of SCF Management, DCM Group owed SCF Cedar and SCF Management fiduciary duties, including that of care, loyalty, and good faith and fair dealing.

150.    As manager of DCM Group and an officer/principal of SCF Management, Mangan owed SCF Cedar and SCF Management fiduciary duties, including that of care, loyalty, and good faith and fair dealing.

151.    Ciron, Mangan, and DCM Group breached their fiduciary duties to Plaintiffs by, *inter alia*:

> a.    Conspiring and depriving SCF Cedar of the opportunity to purchase DCM Group's purported ownership interests in SCF Management;

> b.    Conspiring and purporting to reduce SCF Cedar's ownership interest in SCF Management by and through a sham capital call and resolution that was adopted in violation of the SCF Cedar Operating Agreement;

c.   Attempting to add Mangan and DCM Group as owners of SCF's liquor license without Nieves' knowledge by and through forging Nieves' signature;

d.   Signing off on and purporting to sell DCM Group's ownership interests in SCF Management, which it did not have, to Salsa Latino in violation of various applicable operating agreements;

e.   Turning over login credentials and access to the Protected Accounts to Guzman who was not authorized to have access to the Protected Accounts;

f.   Authorizing and paying excessive salaries to themselves, depleting the assets of SCF Cedar, failing to maintain adequate corporate books and records, using company funds to pay for personal non-business expenses, and misappropriating company assets and funds; and

g.   Engaging in self-dealing and wasting corporate assets to their own personal benefit and to the detriment of SCF Cedar and Nieves.

152.   As such, Defendants Mangan, Ciron, and DCM Group breached their fiduciary duties and are liable for damages caused to Plaintiffs, including but not limited to, misappropriated funds, Plaintiffs' legal costs and expenses, lost profits and revenues, compensatory damages, and restitution.

**27**

# COUNT NINE
## DECLARATORY JUDGMENT

153.    Each of the foregoing paragraphs is repeated, realleged, and incorporated by reference as if set forth at length herein.

154.    Plaintiffs and Defendants are parties and/or signatories on various agreements and documents including the SCF Operating Agreement, the SCF Management Operating Agreement, the Management Agreement, the SCF Management Resolution, the MIPA, and the Lease Agreement.

155.    There is a substantial, definite, and concrete dispute between the parties concerning the agreements.

156.    Therefore a justiciable controversy exists pertaining to the agreements.

157.    Specifically, Plaintiffs seek a declaration finding that:

    a.    Ciron never became a member of SCF Cedar pursuant to the SCF Cedar Operating Agreement because he did not make the required capital contribution;

    b.    DCM Group never became a member of SCF Management pursuant to the SCF Management Operating Agreement because it did not make the required capital contributions;

    c.    The Management Agreement is void *ab initio* because SCF Management did not exist at the time it was made and therefore could not have been a party and alternatively the Management Agreement was effectively terminated as of May 2025 and has no further force or effect;

**28**

d. The SCF Management Resolution is void *ab initio* because the parties thereto did not have the requisite authority to adopt the resolution;

e. If DCM Group is found to be a member of SCF Management, then its ownership interest was only 40% and not 50%;

f. The MIPA is void *ab initio* because DCM Group did not own 50% of SCF Management, DCM Group did not have the requisite authority to sell its membership interests (to the extent it owned any), and Ciron did not have the requisite authority to waive the right of first refusal to buy the offered shares on behalf of SCF Cedar;

g. The Lease Agreement is void *ab initio* because Salsa Latino/Guzman did not have the requisite authority to enter into the agreement on behalf of SCF Management;

h. Confirming and adjudicating SCF Cedar's leasehold of the Property; and

i. Salsa Latino is not an owner, member, or manager of SCF Management or the Salsa Con Fuego Business.

158. An actual controversy exists as to each of the above.

159. The controversies are real and immediate, and warrant the declaratory relief sought.

# COUNT TEN
## TORTIOUS INTERFERENCE WITH EXISTING AND PROSPETIVE CONTRACTUAL AND BUSINESS RELATIONSHIPS

160.    Each of the foregoing paragraphs is repeated, realleged, and incorporated by reference as if set forth at length herein.

161.    Economic relationships have existed between Plaintiff SCF Cedar and its customers, suppliers, business partners and landlord, which have been advantageous to Plaintiff.

162.    Being in the business of, among other things, providing restaurant, entertainment, bar, and private event services to the public, SCF Cedar has developed valid and existing business relationships with thousands of customers with the probability of future economic benefit for SCF Cedar.

163.    SCF Cedar also had a contractual relationship with DRBX Holdings, the landlord for the Property, by and through a lease agreement.

164.    Defendants knew that SCF Cedar sought to protect its relationship with its business customers and landlord.

165.    Defendants further knew that SCF Cedar needed the Property to operate the Salsa Con Fuego Business and needed access to its Protected Accounts to manage, operate, market, promote, and run the business.

166.    In spite of this knowledge, Defendants wrongfully interfered with SCF Cedar's prospective economic advantage and existing business relationships by and through wrongfully, intentionally, and maliciously usurping and misappropriating

Plaintiffs' trade secrets and proprietary business information for the purpose of benefitting Defendants and to the intended detriment of Plaintiffs.

167.    In spite of this knowledge, Defendants wrongfully interfered with SCF Cedar's prospective economic advantage and existing business relationships by attempting to shut SCF Cedar out of the business, holding the Property Accounts hostage, and inducing DRBC Holdings to no longer do business with SCF Cedar.

168.    Defendants engaged in these acts with full knowledge and intention to interfere with or disrupt the economic relationships that SCF Cedar enjoyed with its customers, and the wrongful acts described herein demonstrate Defendants' intentional conduct and bad faith.

169.    Defendants' conduct was intentional and willful in that Defendants intended to harm SCF Cedar 's economic and financial interests.

170.    Defendants' conduct was wrongful and not justified, privileged, or excusable.

171.    As a direct and proximate result of Defendants' wrongful conduct, SCF Cedar has suffered economic losses, including but not limited to, lost customers, business, revenues, and profits, as well as irreparable harm and loss of goodwill, and SCF Cedar is entitled to compensatory damages in an amount to be proven at trial and punitive damages as a result of Defendants' intentional, willful, and malicious conduct.

# COUNT ELEVEN
## JUDICIAL DISSOLUTION

172.   Each of the foregoing paragraphs is repeated, realleged, and incorporated by reference as if set forth at length herein.

173.   The SCF Management Operating Agreement provides for dissolution of the company upon the occurrence of "any event requiring dissolution under New York law" or "by the written agreement of 80% of the Class A Interest". *See* SCF Management Operating Agreement at § 11.01.

174.   SCF Management seeks a judicial determination finding that DCM Group never became an owner of SCF Management and therefore 100% of the Class A Interest shares belong to SCF Cedar, which can approve the dissolution.

175.   Nevertheless, to the extent DCM Group is found to be an owner and member of SCF Management, SCF Management seeks a judicial resolution of the company because it is not reasonably practicable for the limited liability company to continue to carry on its business in conformity with the operating agreement.

176.   The purpose of SCF Management was to "own, operate and manage a restaurant, bar and club located at 2297 Cedar Avenue, Bronx, New York." *See* SCF Management Operating Agreement at § 3.01(a).

177.   SCF Management, however, does not own or operate the business and is no longer the manager. *See* Termination Letter, Exh. G.

178.   As such, SCF Management can no longer continue to carry on its business in accordance with the operating agreement, and therefore, must be judicially dissolved.

4933-3935-2698, v. 1

# COUNT TWELVE
## FRAUD AND INTENTIONAL MISREPRESENTATION

179. Each of the foregoing paragraphs is repeated, realleged, and incorporated by reference as if set forth at length herein.

180. Ciron, Mangan and one or more of the Defendants made numerous verbal, forged, and otherwise written, fraudulent misrepresentations in order to improperly apply for and procure an ownership interest in the liquor license issued by the State of New York to SCF Cedar.

181. Specifically, Ciron, Mangan and/or one or more of the Defendants misrepresented material information to the New York State Liquor Authority in furtherance of improperly, illegally, and without authorization seeking to add themselves to SCF Cedar's liquor license.

182. Ciron, Mangan and/or one or more of the Defendants forged and/or caused to be forged Nieves' signature on applications submitted to the New York State Liquor Authority for purposes of improperly, illegally, and without authorization adding themselves to SCF Cedar's liquor license.

183. Moreover, Ciron, Mangan and DCM Group made material misrepresentations as discussed and described herein in connection with the purported sale of DCM Group's disputed membership interests in SCF Management to Salsa Latino.

184. Defendants made these representations with knowledge of their falsity and with the intent that others would rely on same.

185.    Others reasonably relied upon these representations to their detriment and to the specific detriment of SCF Cedar and Nieves.

186.    SCF Cedar and Nieves have been and continue to be damaged by, inter alia, loss of use of the Protected Accounts, loss of business, legal costs and expenses, and costs to cure.

187.    Defendants acted with actual malice and/or a wanton and willful disregard for the rights of SCF Cedar and Nieves.

188.    Defendants have acted wrongfully and maliciously and SCF Cedar and Nieves have been, and continue to be, injured thereby.

189.    As a result of the above-described conduct, SCF Cedar and Nieves have suffered injuries, damages, and economic losses, the specific amount of which will be determined at trial.

## COUNT THIRTEEN
### CONSPIRACY

190.    Each of the foregoing paragraphs is repeated, realleged, and incorporated by reference as if set forth at length herein.

191.    Ciron, Mangan, DCM Group, Salsa Latino, and Guzman conspired and worked together to commit and help commit one or more torts described herein, including breaches of fiduciary duty, conversion, fraud, tortious interference, and misappropriation of trade secrets.

192.    Based on the coordinated actions and communications between and among the Defendants, there was a meeting of the mind to commit the underlying tortious wrongdoing and misconduct.

4933-3935-2698, v. 1

193.    Each Defendant engaged in at least one act that advanced the objectives of the conspiracy, including but not limited to, transferring assets and intellectual property, refusing to turn over login credentials and access to the Protected Accounts, engaging with the Property landlord to take over the lease, forgery, misappropriating trade secrets, and creating false documents.

194.    The aforementioned acts and conduct taken in furtherance of the conspiracy caused damage to Plaintiffs, including but not limited to, loss of business, legal and investigatory expenses, and other damages and losses to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that the Court enter judgment against Defendants as follows:

1.    Ordering Defendants Salsa Latino and Guzman to turn over access to all the Protected Accounts by turning over all the login credentials to Nieves;

2.    Ordering Defendants to provide a full accounting of all the expenses, contributions, salaries, withdrawals, distributions, and spending of SCF Management;

3.    Declaring that Ciron was never an owner of SCF Cedar;

4.    Declaring that DCM Group was never an owner of SCF Management or, at most, owned 40% of SCF Management;

5.    Declaring that the SCF Management Resolution, Management Agreement, MIPA, and Lease Agreement are void *ab initio*;

6.    Declaring that Salsa Latino is not an owner, member, or manager of SCF Management or the Salsa Con Fuego Business;

**35**

7.    Approving the dissolution of and/or judicially dissolving SCF Management;

8.    Awarding Plaintiffs monetary damages, including compensatory damages, actual losses, statutory damages, and exemplary/punitive/treble damages as authorized by applicable statutes or law;

9.    Entering a preliminary injunction precluding Defendants from continuing to use SCF Cedar's trade secrets, confidential business information, trademark, and Protected Accounts;

10.    Permanently enjoining Defendants from using, possessing, or maintaining any of SCF Cedar's trade secrets, confidential business information, trademark, and Protected Account login information, and any derivatives, copies, or compilations Defendants created using that data or information.

11.    Awarding Plaintiffs incidental, consequential and other damages, remedies, and relief as deemed proper and lawful by the Court, and in such amount as may be proven at trial.

12.    Awarding Plaintiffs the corrective advertising damages and enhanced damages.

13.    Awarding Plaintiffs their reasonable attorneys' fees and costs as authorized by applicable statutes.

Plaintiff demands a trial by jury on all triable issues.

4933-3935-2698, v. 1

**STARK & STARK**
A Professional Corporation
*Attorneys for Plaintiffs SCF Cedar LLC,*
*Salsa Con Fuego Management LLC and*
*Joseph Nieves*


By: __/s/ *Gene Markin*_____
　　　GENE MARKIN, ESQ.

Dated:　November 18, 2025

**37**